## Case No. 6,732.

HOURQUEBIÉ et al. v. GIRARD.

[2 Wash. C. C. 212.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1808.

PRINCIPAL AND AGENT — PRODUCTION OF RECORD OF FOREIGN COURT—PARTNERSHIP PROPERTY —SALE—CONVERSION—ADVANCES.

1. The sentence of a foreign court of admiralty being full, and showing the ground of condemnation, no other part of the record need be produced.

2. If an agent or factor sell the goods of his. principal, and has not received payment, or having received the same, invests the proceeds in property for the use of his principal, or marks and puts it away, the principal has a right thereto, and is entitled to the profits thereon, against the agent or his general creditors. Aliter, if the agent applies the money to his own use, and charges himself with it in account.

[Cited in Thompson v. Perkins, Case No. 13,-972.]

[Cited in Overseers of the Poor v. Bank of Virginia, 2 Grat. (Va.) 547; Hamilton v. Hamilton's Ex'r, 18 Pa. St. 22.]

3. If two are jointly concerned in a particular adventure, the one authorized to dispose of the property, may appropriate the whole proceeds to his own use, and make himself the debtor to the other for a moiety; or he may hold the money for the joint account, and subject his associate to all the risks which may attend it.

4. If the connexion in a joint adventure terminate in the sale of the property, and one appropriates the proceeds to his own use, and charges himself with the proportion due to his. associate in the adventure, an action on the case will lie for the part owner for his portion. Aliter, if the connexion does not terminate with the sale, in which case, account rendered must be brought.

5. If the plaintiff makes advances for another before and after his death, in an action against the executor, for money laid out and advanced for the testator, the advances made after the death of the testator, cannot be recovered.

Action on the case [against Stephen Girard, administrator of John Girard]. The declaration contained a count, upon account stated, in April, 1803; a count for goods sold, and the usual money counts. Pleas, payment, with leave, non assumpsit, and fully administered. The principal items claimed by the plaintiffs, were, the sum of 26,961 francs, due by an account settled between the plaintiffs and John Girard, in April, 1803, at Bordeaux;

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

with a memorandum, stating that the plaintiffs were to be accountable for freights, which should be received by them from the government, on a quantity of flour, to Senegal and Cayenne; as also on other property which may be received for account of John Girard. The second item is for one half of one hundred casks of wine, shipped on board of John Girard's vessel, the Lucy, of which he was commander; the only evidence of which was an account of sales of the said wine, at Goree, dated the 11th of June, 1803, and sent by John Girard to the plaintiffs, which account is headed thus: "Accounts of sales of wine, shipped in my brig, the Lucy, on joint account with Hourquebie & Brothers, agreeably to invoice, and intended for Cayenne, and other places, under my mark, 3878 dollars, one half, 1939 dollars, belonging to Hourquebies, with which I credit them." The third item of much consequence, was for money paid by the plaintiffs, for the board and education of John Girard's children; some of which became due, and was paid before, and some after the death of John Girard, which happened in October, 1803. The plaintiffs sent a commission to Bordeaux, in which the defendant joined; and each sent forward interrogatories attached to the commission. One of the plaintiffs' interrogatories required the witnesses to look upon the plaintiffs' book of entries, and to authenticate the same, and to say who made the entries. To this, all the witnesses answer "that the plaintiffs being present, state they have no books to represent; for, if there were, the entries would only conform to the account annexed to the commission, and therefore it is unnecessary to answer the questions." The defendant's counsel, in consequence of some agreement at the last term with the plaintiffs' counsel, when a continuance was granted the defendant, waived any objection to the commission, in consequence of this interrogatory not being answered; but they contended, that the refusal of the plaintiffs, to produce them before the commission for examination, and to enable the witnesses to answer the interrogatory, afforded a sufficient ground for the jury to presume, that if they had been exhibited, the entries would have shown that the sum due, by the settled account, had been discharged, by receipts of the sums alluded to in the memoranda to that account. Against the second item, on account of the wine, the defendant offered in evidence the record of a sentence of the vice admiralty court, in February, 1804, condemning the Lucy, John Girard, master, and about 4700 dollars, in gold and silver. The counsel insisted, that this specie was the result of the sales of the wine at Goree; and consequently, that the plaintiffs having thus lost their half of the proceeds of the wine, cannot now make it a debit against the defendant. The plaintiffs' counsel objected, that on the plea of payment, notice of this defence should have been given; and besides, the record

does not appear to apply to this charge; besides which the record is not complete, the depositions taken in the case not being included in it.

BY THE COURT. The plea being non assumpsit, as well as payment, the state rule of practice, as to the plea of payment, is inapplicable. Second; whether the money condemned, were or were not the proceeds of the wine, is a question proper for the jury. Third; the sentence being full, and showing the ground of condemnation, and the property condemned, no other part of the proceedings are necessary to be produced.

The defendant's counsel argued, that the affair of the wine was a past transaction, and that the partnership, not being at an end at the time of the loss by capture and condemnation, and the balance being unliquidated, the plaintiff cannot recover, in this form of action, his half of those proceeds, even if his right was not lost by the condemnation, which they strongly contended it was. They cited 2 New York T. Rep. 293; [Ozeas v. Johnson] 4 Dall. [4 U. S.] 434; and the case of Lamalere v. Caze [Case No. 8,003], in this court. They insisted, that according to the regular course of such voyages, and such partnership as this was, John Girard might have invested that money in other cargoes on joint account, to a moiety of the profits of which the plaintiffs would have been entitled; or, if he had not so invested them, but had become bankrupt, the plaintiffs would have been entitled to his half of the proceeds, in preference to the general creditors. The plaintiffs' counsel combatted all the points made by the defendant's counsel.

Dallas and Milnor, for plaintiffs.
Ingersoll and Tilghman, for defendant.

WASHINGTON, Circuit Justice (charging jury). There are only two items in this account, which seem to be much contested. The first is the amount of the settled accounts in April, 1803; and the second, the plaintiffs' moiety of the account of sales of the one hundred casks of wine, in June of that year. As to the first; it is admitted, that the 26,961 francs were due to the plaintiffs in April, 1803; but it is contended, that by some means or other that debt has been satisfied, or that the jury may and ought so to presume, principally, from the circumstance of the plaintiffs not having produced their books to the commissioners, in compliance with the call of their own counsel. No proof of payments, other than what are credited, is given; nor is there any evidence to induce a suspicion of such a fact, and which those books might have cleared up. To create a presumption, some ground must first be laid. In this case none is pretended, and it is therefore too much to expect that a jury, passing upon the plea of payment, will, upon their oaths and affirmations, say,

that, from this circumstance, the debt has been paid. The defendant, by his own conduct, has destroyed the very presumption which his counsel rely on. For, if it be a just inference, that the books, if produced, would show that this debt has been paid, it was in the power of the defendant to have compelled their production, or the examination of them by the commissioners. It may then, at least, be suspected, that the counsel ask you to presume what their client does not himself believe, or has not much confidence in. But you are asked to inflict upon the plaintiffs, a punishment for not producing their books at the call of their own counsel, to which they would not have been subjected, had they refused to produce them upon a regular notice from the defendant. For, if you presume the debt paid, on account of this circumstance, the plaintiffs will be forever barred; whereas, if the call had been made under the act of congress, only a nonsuit would have been the consequence.

Second; as to the proceeds of the wine. This presents three questions. First; were those proceeds lost by capture and condemnation? second: if lost, are the plaintiffs' interests involved? and, third; if not involved, still can they recover in this form of action? The first is purely a question of fact. You will follow John Girard, in the Lucy, from Bordeaux to Goree, where the wine was sold; thence to St. Vincent's; and then to Antigua, where she was condemned. Attend to the cargo he brought out with him, and the disposition of it. The defendant insists, that as the flour taken on board belonged to government, and was on freight, and it does not appear that John Girard had any other cargo of his own, the money found on board, and condemned, must have been the proceeds of the wine. On the other hand, it is said, that John Girard might have had other cargo of his own, or might have had money of his own from other sources; and that, at all events, the evidence is too weak for you to found presumption upon. We leave you to judge of this. We have, indeed, no fixed opinion upon it; and if we had, we should think it improper to declare it.

The second point under this head, is, if the money condemned did result from the sales of the wine, are the plaintiffs to share in the loss? This is a question of law. We think it clear, that if an agent or factor sell goods consigned to him, and has not received the money, or having received it, invests it in property for the use of his principal, or marks it and puts it away as belonging to his principal, the latter has a right thereto, and is entitled to the profits made from it, for his account, either against the factor or his general creditors. On the other hand, it is equally clear, that if the factor applies the money to his own use, charging himself with the amount, in account with his principal, the money cannot be specifically followed; but the agent is merely a debtor for so much money. In like manner, if two persons be jointly concerned in a particular adventure, as in the case under consideration, where one is authorized to dispose of the whole, on joint account, if the connexion is of such a nature as to terminate with the sale, the owner, who made the sale, may appropriate the whole proceeds to his own purpose, and make himself debtor to the other for his proportion; or, he may hold the money for their joint account, entitling the other to a specific lien on it, and subjecting him to all the risks which may attend it as such. In this case, John Girard chose to apply the money to his own use, and to make himself a debtor to the plaintiffs for their half of it. The question is, had he a right to do so? It is insisted, by the defendant's counsel, that the partnership subsisted and continued after the sale at Goree; and thence it is inferred, that if profits had been made, or if John Girard had become a bankrupt, that the plaintiffs would have been entitled, in the first case, to his share of the profits, and in the latter, to a preference of the general creditors. But this is begging the whole question. The question is, did the joint concern continue after the sale, or did it then terminate? If it continued to further operations, the consequences deduced are clear, and the plaintiffs must bear the loss of their half of the proceeds. If it did not continue, these consequences would not follow. As we understand the only evidence on this subject, which is the account of sales, there was a joint concern in a single adventure, which was to terminate, and did terminate, upon the sale of the wine; one-half of the proceeds of which belonged to John Girard, and the other half he took to his own account, and credited the plaintiffs with it. This evidence of the nature of the connexion, is furnished by John Girard himself. The manner in which he closed the transaction, was communicated to the plaintiffs, who, by years of acquiescence, assented thereto, and have solemnly confirmed the same, by bringing this action for the amount thus passed to their credit.

But it is contended, that, according to the course of such a trade as the present, and the understanding of merchants respecting it, the connexion did continue, and was subsisting even at the time of the capture. It may be so; but certainly no evidence of such a custom was offered. The counsel appealed to the mercantile part of the jury, for the correctness of their statement. Should the jury undertake to act upon such a custom, we would warn them to examine well the very case before the court, before they bring the custom to bear upon it. The question is not, whether, if two are jointly concerned in a cargo, on such a voyage as the present, and a sale be made, the proceeds invested in other cargoes, the other

joint owner is entitled to share in profits and loss; but whether, if, after a sale, the whole proceeds are taken by the owner, who, on his own account, and as agent for the other owner, made the sale, and one-half is carried to the account of the other owner, the latter can claim ulterior profits, should such be made; or will be bound to stand by any loss which may arise? Such a custom, if it exists, strikes me as a very strange one.

The third point, under this head, depends upon the one we have just been considering. If the connexion between the plaintiffs and John Girard terminated by the sale at Goree, then clearly the appropriation by the latter of the plaintiff's part of the proceeds to his own account, acquiesced in for so many years by the plaintiffs, lays a clear foundation for their recovery, in this form of action, agreeably to the principles laid down in all the cases cited at the bar. If the connexion did not terminate there, this sum cannot be recovered in this form of action. As to the sums advanced by the plaintiffs for the board and education of John Girard's children, only those sums paid before the death of John Girard, can be recovered in this action. Verdict for plaintiffs.